1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

| | |
|---|---|
| WEST-HARDWICK MARINE, LLC, an Alaska limited liability company, | IN ADMIRALTY |
| Plaintiff, | NO. |
| v. | VERIFIED COMPLAINT TO FORECLOSE PREFERRED MARINE MORTGAGE *IN REM* AND *IN PERSONAM* |
| SPIRIT OF DISCOVERY, Official Number 574958, her engines, furniture and appurtenances, *In Rem*; | |
| and | |
| WEST TRAVEL, INC., a Washington corporation, *In Personam*, | |
| Defendants. | |

18

Plaintiff West-Hardwick Marine, LLC ("West-Hardwick") alleges:

19

## I. JURISDICTION AND PARTIES

20

1.    Plaintiff West-Hardwick is an Alaska limited liability company with its principal

21

place of business in Sitka, Alaska.

22

2.    At all times material herein, *In Rem* Defendant SPIRIT OF DISCOVERY,

23

Official Number 574958, her engines, machinery, appurtenances, etc. ("Vessel') was duly

24

documented under the laws of the United States.  The Vessel is now, or will be during the

VERIFIED COMPLAINT TO FORECLOSE PREFERRED
MARINE MORTGAGE *IN REM* AND *IN PERSONAM* - 1

YOUNG deNORMANDIE

SECOND & SENECA BUILDING
1191 SECOND AVENUE, SUITE 1901
SEATTLE, WASHINGTON 98101
Phone: (206) 224-9818  Fax: (206) 623-6923

1  pendency of process herein, within the jurisdiction of this Court. A true and correct copy of the

2  Vessel's Certificate of Documentation is attached hereto as Exhibit 1.

3       3.      *In Personam* Defendant West Travel, Inc. is a Washington corporation ("Owner")

4  with its principal place of business in Seattle, Washington.

5       4.      This is an action for breach of a maritime contract and to foreclose a ship

6  mortgage. The action is a matter of admiralty and maritime jurisdiction under 46 U.S.C. § 31322

7  and § 31325 and within the meaning of Rule 9(h).

8                              **II.  FACTS**

9       5.      Owner entered into that certain Revolving Credit Line and Security Agreement

10  dated June 18, 2010 ("Loan Agreement") with Sterling Savings Bank ("Sterling") and HSBC

11  Bank USA National Association ("HSBC") as co-lenders. Collectively, Sterling and HSBC are

12  referred to herein as the "Bank".

13      6.      Pursuant to the terms of the Loan Agreement, for valuable consideration, Owner

14  executed and delivered to Sterling that certain Promissory Note dated June 18, 2008 in the

15  principal sum of Eight Million and 00/100 Dollars ($8,000,000.00) (the "Sterling Note"). A true

16  and correct copy of the Sterling Note is attached hereto as Exhibit 2.

17      7.      Contemporaneously, Owner executed and delivered to Bank that certain

18  Promissory Note dated June 18, 2010 in the principal sum of Ten Million and 00/100 Dollars

19  ($10,000,000.00) ("HSBC Note"). A true and correct copy of the HSBC Note is attached as

20  Exhibit 3. Collectively the Sterling Note and the HSBC Note are referred to herein as the

21  "Notes".

22      8.      Owner executed that certain Preferred Ship Mortgage dated June 18, 2008

23  ("Mortgage") as security for Owner's payment and performance under the terms of the Notes.

24  The Mortgage was recorded against the Vessel with the National Vessel Documentation Center

VERIFIED COMPLAINT TO FORECLOSE PREFERRED
MARINE MORTGAGE *IN REM* AND *IN PERSONAM* - 2

YOUNG *de*NORMANDIE

SECOND & SENECA BUILDING
1191 SECOND AVENUE, SUITE 1901
SEATTLE, WASHINGTON 98101
Phone: (206) 224-9818 Fax: (206) 623-6923

1 ("NVDC") on June 19, 2008, at 12:07 p.m., Batch Number 645475, Document ID 9073412. In

2 all respects, the Mortgage qualifies as a Preferred Mortgage under 46 U.S.C. § 31322 and §

3 31325. A true and correct copy of the Mortgage is attached as Exhibit 4. The Loan Agreement,

4 the Notes and the Mortgage are collectively referred to herein as the "Loan Documents".

5      9.      On or about September 8, 2010, Bank sold and assigned its rights under the Loan

6 Documents to West-Hardwick. The Notice of Assignment of the Mortgage (USCG Form 5542)

7 was contemporaneously filed with NVDC ("Assignment"). A true and correct copy of the

8 executed Assignment is attached hereto as Exhibit 5.

9      10.     Owner has failed to meet the financial covenants under the Loan Agreement and

10 has failed to remit payments due under the terms of the Notes. By their terms, as of August 31,

11 2010, Owner is in default under the terms of the Loan Documents.

12      11.     As of September 7, 2010, Owner owes West-Hardwick the principal amount of

13 Fifteen Million and 00/100 Dollars ($15,000,000.00) plus accrued interest (calculated through

14 September 7, 2010) of Two Hundred and Thirty One Thousand Five Hundred and Seventy Five

15 and 34/100 Dollars ($231,575.34), plus costs and attorneys' fees, as set forth below.

16      12.     Prior to Default, the interest accrued on the outstanding principal balance at a

17 floating rate equal to the HSBC Prime Rate (currently 3.25%), plus 2.5%, computed daily. The

18 operative rate through the date of default was 5.75% per annum.

19      13.     The default interest rate is the HSBC Prime Rate (currently 3.25%), plus 3%,

20 currently 6.25% ("Default Rate").

21      14.     Owner owes a Late Charge equivalent to 5% of the overdue payment.

22      15.     All amounts due under the Loan Documents have been accelerated and are now

23 due and payable, in full.

24

VERIFIED COMPLAINT TO FORECLOSE PREFERRED
MARINE MORTGAGE *IN REM* AND *IN PERSONAM* - 3

YOUNG *de*NORMANDIE

SECOND & SENECA BUILDING
1191 SECOND AVENUE, SUITE 1901
SEATTLE, WASHINGTON 98101
Phone: (206) 224-9818 Fax: (206) 623-6923

### III. CAUSE OF ACTION: BREACH OF CONTRACT

16.     West-Hardwick incorporates by reference Paragraphs 1 through 15, above, as if set forth fully herein.

17.     As a result of Owner's failure to remit payments when due and to satisfy the other covenants under the Loan Documents, Owner is in default under the terms of the Loan Documents, including the Notes and the Mortgage.

18.     As of September 7, 2010, Owner owes to West-Hardwick principal and interest in the amount of Fifteen Million Two Hundred and Thirty One Thousand Five Hundred and Seventy Five and 34/100 Dollars ($15,231,575.34).

19.     Currently, costs and fees resulting from Owner's default total Ninety Nine Thousand Five Hundred and Ten and 39/100 Dollars ($99,510.39).

20.     As a result of Owner's breach, West-Hardwick is entitled an entry of judgment against Owner in an amount not less than Fifteen Million Two Hundred and Thirty One Thousand Five Hundred and Seventy Five and 34/100 Dollars ($15,231,575.34), or such greater amount as may be proven at trial, plus prejudgment default interest at the rate the 6.25%, and award of all costs and attorneys' fees incurred as a result of Owner's default.

21.     The laws of the United States provide that upon a default of any term of a preferred mortgage, the mortgage holder may enforce its claim for outstanding indebtedness against the mortgaged vessel, *in rem*, under 46 U.S.C. § 31325.

### IV. PRAYER FOR RELIEF

**WHEREFORE**, West-Hardwick prays for judgment as follows:

1.     That this Court find that Defendant West Travel, Inc. is in breach of the Loan Documents and grant West-Hardwick judgment jointly and severally against the vessel SPIRIT OF DISCOVERY, *in rem*, and owner West Travel, Inc., *in personam*, for:

VERIFIED COMPLAINT TO FORECLOSE PREFERRED
MARINE MORTGAGE *IN REM* AND *IN PERSONAM* - 4

YOUNG *de*NORMANDIE

SECOND & SENECA BUILDING
1191 SECOND AVENUE, SUITE 1901
SEATTLE, WASHINGTON 98101
Phone: (206) 224-9818  Fax: (206) 623-6923

1          a.     The principal sum of Fifteen Million Two Hundred and Thirty One

2  Thousand Five Hundred and Seventy Five and 34/100 Dollars ($15,231,575.34), plus

3  prejudgment interest from September 7, 2010 accruing at the default rate of 6.25% per annum;

4  and

5          b.     For all reasonable costs and fees incurred herein as provided for in the

6  Notes and Mortgage including attorneys' fees, witness fees (expert and otherwise), and discovery

7  and deposition costs as well as costs and attorneys' fees incurred in any appeal or in any

8  proceeding under any present or future federal bankruptcy, forfeiture or state receivership or

9  similar and all costs or expenses incurred for all keepers and all expenses for the sale of the

10  Vessel, her engines, machinery, appurtenances, etc.

11         2.     That West-Hardwick be adjudged the holder of a first Mortgage on the Vessel for

12  the payment of sums due, including pre and post judgment interest, costs and attorneys' fees, and

13  that this Court declare the lien of the Mortgage to be superior to all other liens which may exist

14  against the Vessel.

15         3.     That the Mortgage be foreclosed and the Vessel be sold by the United States

16  Marshal and the proceeds of the sale be applied and delivered to pay the demands and claims of

17  West-Hardwick in the amount and to the extent as specifically provided herein, together with all

18  costs and attorneys' fees, and that it be declared that any and all persons, firms or corporations

19  claiming any interest in the Vessel are forever barred and foreclosed of and from all rights of

20  equity or redemption or claim in and to the Vessel.

21         4.     That *in rem* process of the law issue against the Vessel.

22

23

24

YOUNG *de*NORMANDIE

SECOND & SENECA BUILDING
1191 SECOND AVENUE, SUITE 1901
SEATTLE, WASHINGTON 98101
Phone: (206) 224-9818  Fax: (206) 623-6923

5.     That at the sale of the Vessel by the United States Marshal, West-Hardwick be permitted to credit bid, without a cash deposit, principal, accrued interest, costs and attorneys' fees, up to the full amount owing thereof and that Owner remain liable for any deficiency.

6.     That West-Hardwick have such other and further relief as in law and equity it may be entitled to receive.

7.     That West-Hardwick be permitted to amend this Complaint at trial

DATED this 16th day of September, 2010 at Seattle, Washington.

s/ John G. Young
State Bar Number 12890
s/ Markos Scheer
State Bar Number 29233
s/ Luke M. LaRiviere
State Bar Number 32039
YOUNG deNORMANDIE, P.C.
1191 Second Avenue, Suite 1901
Seattle, Washington 98101
Telephone: (206) 224-9818
Facsimile: (206) 623-6923
E-mail: jgyoung@ydnlaw.com
E-mail: mscheer@ydnlaw.com
Email: llariviere@ydnlaw.com
Attorneys for Plaintiff West-Hardwick Marine, LLC

YOUNG deNORMANDIE

SECOND & SENECA BUILDING
1191 SECOND AVENUE, SUITE 1901
SEATTLE, WASHINGTON 98101
Phone: (206) 224-9818 Fax: (206) 623-6923

## **VERIFICATION**

Under penalty of perjury pursuant to the laws of the United States, I, John Hardwick, declare that I am the manager of and a member of Plaintiff West-Hardwick Marine, LLC, and that, to the best of my personal knowledge after reasonable inquiry, the factual assertions set forth above are true and correct.

DATED this ___16th___ day of September, 2010 at Seattle, Washington.

_____
JOHN HARDWICK

M:\Data\N-Z\West Hardwick Marine\Spirit of Discovery\Pleadings\Complaint-Discovery.doc

VERIFIED COMPLAINT TO FORECLOSE PREFERRED
MARINE MORTGAGE *IN REM* AND *IN PERSONAM* - 7

YOUNG *de*NORMANDIE

SECOND & SENECA BUILDING
1191 SECOND AVENUE, SUITE 1901
SEATTLE, WASHINGTON 98101
Phone: (206) 224-9818  Fax: (206) 623-6923

# EXHIBIT 1

EXHIBIT   1
Page 8 of 35

DHS, USCG CG-1270 (REV. 06-04)

OMB APPROVED
1625-0027



# UNITED STATES OF AMERICA

### DEPARTMENT OF HOMELAND SECURITY
### UNITED STATES COAST GUARD

### NATIONAL VESSEL DOCUMENTATION CENTER

# *CERTIFICATE OF DOCUMENTATION*

| VESSEL NAME | OFFICIAL NUMBER | IMO OR OTHER NUMBER | YEAR COMPLETED |
|---|---|---|---|
| SPIRIT OF DISCOVERY | 574958 | 7641413 | 1976 |

| HAILING PORT | HULL MATERIAL | | MECHANICAL PROPULSION |
|---|---|---|---|
| SEATTLE, WA | STEEL | | YES |

| GROSS TONNAGE | NET TONNAGE | LENGTH | BREADTH | DEPTH |
|---|---|---|---|---|
| 910 GT ITC | 341 NT ITC | | | |
| 94 GRT | 65 NRT | 143.8 | 36.0 | 11.6 |

PLACE BUILT
BOOTHBAY HARBOR, ME

| OWNERS | OPERATIONAL ENDORSEMENTS |
|---|---|
| WEST TRAVEL INC | COASTWISE |
| | REGISTRY |
| | RECREATION |

NATIONAL VESSEL DOCUMENTATION CENTER
U.S. COAST GUARD

I HEREBY CERTIFY THIS TO BE A TRUE COPY
OF THE RECORDS OF THIS OFFICE

MANAGING OWNER
WEST TRAVEL INC
2301 5TH AVENUE - SUITE 401
SEATTLE, WA 98121

*Robin Roman*
DOCUMENTATION OFFICER          DATE

AS OF 9/2/2010 @ 9:09am

RESTRICTIONS
NONE

ENTITLEMENTS
NONE

REMARKS
NONE

ISSUE DATE
MARCH 22, 2010

*Patricia J Williams*

THIS CERTIFICATE EXPIRES
APRIL 30, 2011

DIRECTOR, NATIONAL VESSEL DOCUMENTATION CENTER

VDS
11780582

# EXHIBIT 2

EXHIBIT  2
Page 10 of 35

## REVOLVING CREDIT NOTE

USD$8,000,000.00

Seattle, Washington
June 18, 2008

FOR VALUE RECEIVED, WEST TRAVEL, INC., a Washington corporation ("Borrower"), promises to pay to STERLING SAVINGS BANK ("Sterling"), or order, the principal sum of Eight Million and NO/100 Dollars (USD$8,000,000.00), or so much thereof as is advanced by Sterling pursuant to the terms and conditions of that certain Revolving Credit Line and Security Agreement dated June 18, 2008, by and among Sterling, HSBC Bank USA, N.A. and Borrower and incorporated herein by this reference as if fully set forth herein (the "Agreement"), in lawful money of the United States, with interest and charges as provided therein and herein. Payments under this note (the "Note") shall be made to Agent, for the benefit of Sterling, at 600 University Street, Suite 2323, Seattle, Washington 98101, or at such other place as Agent may designate in writing from time to time. All capitalized terms not defined herein shall have the meanings set forth in the Agreement, and in case of any inconsistency between this Note and the Agreement, the terms of the Agreement shall govern.

Interest, fees and charges will be calculated, and Loans repaid, in accordance with and pursuant to the provisions of the Agreement.

Borrower shall pay the actual out-of-pocket costs, breakage fees, losses, costs, charges and expenses of Sterling incurred in liquidating or terminating any contract relating to any LIBOR based Loan. Immediately upon the end of any LIBOR Loan, the Borrower shall pay interest on such Loan equal to the Prime Rate, as set forth in the Agreement. Borrower acknowledges that LIBOR Loans may not be available from time to time, and that LIBOR Loans shall not be available at any time any Default or Event of Default exists.

Borrower may prepay all or a part of the unpaid principal amount of any Loan at any time. Principal payments will be applied to the Loan identified by Borrower to Sterling in writing at the time of the principal repayment.

Borrower shall immediately pay to Agent for the benefit of Sterling any difference between the amount of the Commitment and amounts outstanding under the Agreement, including the face amounts of any Letters of Credit then outstanding. Any amounts so paid shall be first applied to amounts owing hereunder and under the Agreement that are not principal or interest; thereafter, such payments shall be applied to principal and/or interest as Borrower shall designate.

Borrower acknowledges that a substantial portion of the Loan may be due at the Maturity Date. This Note constitutes an actual loan from Sterling to Borrower, and the repayment of this Note is secured by the Collateral.

If Sterling consults an attorney regarding the enforcement or protection of any of its rights under any of the Loan Documents, or if any Loan Document is placed in the hands of an attorney for collection, or if suit is brought to enforce any Loan Document, Borrower promises to pay all reasonable costs thereof, including attorneys' fees, witness fees (expert and otherwise), and discovery and deposition costs. Said costs and attorneys' fees shall include, without limitation, costs and attorneys' fees incurred in any appeal or in any proceedings under any present or future federal bankruptcy, forfeiture or state receivership or similar law.

By its execution of this Note, Borrower represents and warrants to Sterling that the Loan proceeds will be used exclusively for commercial, investment, or business purposes and no Loan proceeds will be used for personal, family or household purposes.

It is agreed that notwithstanding any provision to the contrary in this Note or the other Loan Documents, no such provision shall require the payment or permit the collection of any amount in excess of the maximum amount of interest permitted by applicable law to be charged for the use or detention, or the forbearance in the collection, of all or any portion of the indebtedness evidenced by this Note ("Excess Interest"). If any Excess Interest is provided for, or is adjudicated to be provided for, in this Note or the other Loan Documents, then in such event (a) the provisions of this paragraph shall govern and control; (b) neither Borrower nor any guarantor or endorser shall be obligated to pay any Excess Interest; (c) any Excess Interest that Sterling may have received hereunder shall, at the option of Sterling, be (i) applied as a credit against the then outstanding principal amount of the Loan, accrued and unpaid interest thereon (not to exceed the maximum amount permitted by applicable law) or any other of Borrower's liabilities to Sterling, or any or all of the foregoing; (ii) refunded to the payor thereof; or (iii) any combination of the foregoing; (d) the interest rate shall be automatically subject to reduction to the maximum lawful contract rate allowed under applicable usury laws, and this Note and the other Loan Documents shall be deemed to have been, and shall be, reformed and modified to reflect such reduction in the interest rate; and (e) neither Borrower nor any guarantor or endorser shall have any action against Sterling for any damages whatsoever arising out of the payment or collection of any Excess Interest.

Borrower and Sterling intend and believe that each provision of this Note complies with all applicable laws. However, should any provision of this Note be found to be in violation of any law, ordinance, or policy and be declared illegal, invalid, unlawful, void or unenforceable as written, then Borrower and Sterling intend and agree that such provision shall be given force to the fullest possible extent and that the remainder of this Note shall continue to be fully enforceable in accordance with the terms hereof.

Any notice, report, or other communication required or permitted to be given hereunder shall be in writing and shall be deemed given on the date of delivery if delivered by courier or by fax; or three (3) days after mailing, if mailed first-class mail, postage prepaid, return receipt requested; or one (1) day after delivery by the sender to a nationwide overnight delivery service charges prepaid, return receipt requested, to the following addresses or fax numbers, as applicable:

EXHIBIT 2
Page 12 of 35

<u>To Sterling</u>:
Sterling Savings Bank
601 Union St. Suite 1717
Seattle, 98101
Telephone:     (206) 233-8320
Facsimile:     (206) 625-9099

<u>With a copy to</u>:

Michael D. Currin
Witherspoon, Kelley, Davenport & Toole, P.S.
422 West Riverside, Suite 1100
Spokane, Washington  99201-0300
Telephone:     (509) 624-5265
Facsimile:     (509) 458-2717


<u>To Borrower</u>:

West Travel, Inc.
2301 5th Avenue, Suite 401
Seattle, WA 98121
Telephone:     (206) 580-0072
Facsimile:     (206) 441-4757

<u>With a copy to</u>:

Stephan Coonrod
Kirkpatrick & Lockhart Preston Gates Ellis LLP
Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Telephone:     (206) 623-7580
Facsimile:     (206) 623-7022


Whenever reference is made to Borrower or Sterling, such reference shall be deemed to refer to and include the heirs, executors, legal representatives, successors and assigns thereof, the same as if in each case expressed, it being expressly agreed that the rights and obligations of all parties named in or liable under this Note shall inure to the benefit of and be binding upon such parties and their respective successors in title, heirs, executors, legal representatives, successors and assigns.

Time is of the essence for purposes of this Note.

Borrower, any endorsers and any guarantors severally waive presentment, protest and demand, notice of protest, demand or dishonor and nonpayment of this Note, and expressly agree that this

**EXHIBIT**  2
**Page** 13 of 35

Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of Borrower or endorsers or guarantors hereof.

This Note is governed by and construed in accordance with the laws of the State of Washington, without giving effect to principles or provision relating to conflict or choice of laws. At the option of the holder hereof, the venue of any action hereon may be laid in King County, Washington, and Borrower waives any defense it may have based on forum non conveniens. As a material part of the consideration for this Note, and with the understanding that Sterling would not make the Loan evidenced hereby without such agreement, Borrower hereby irrevocably submits to the jurisdiction of the State of Washington in any such action.

**BORROWER AND STERLING MUTUALLY AGREE THAT THEY EACH WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THEM AGAINST THE OTHER ON ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS NOTE, THE LOAN DOCUMENTS OR THE LOAN OR LOANS EVIDENCED HEREBY.**

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, MODIFY LOAN TERMS OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

IN WITNESS WHEREOF, Borrower has executed this Note as of the date first above written.

"BORROWER":

WEST TRAVEL, INC.,
a Washington corporation

By ~~Mark Detillion~~

Name ~~Mark Detillion~~

Title ~~VP Finance & CFO~~

**EXHIBIT** 2
**Page** 14 of 35

Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of Borrower or endorsers or guarantors hereof.

This Note is governed by and construed in accordance with the laws of the State of Washington, without giving effect to principles or provision relating to conflict or choice of laws.  At the option of the holder hereof, the venue of any action hereon may be laid in King County, Washington, and Borrower waives any defense it may have based on forum non conveniens.  As a material part of the consideration for this Note, and with the understanding that Sterling would not make the Loan evidenced hereby without such agreement, Borrower hereby irrevocably submits to the jurisdiction of the State of Washington in any such action.

**BORROWER AND STERLING MUTUALLY AGREE THAT THEY EACH WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THEM AGAINST THE OTHER ON ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS NOTE, THE LOAN DOCUMENTS OR THE LOAN OR LOANS EVIDENCED HEREBY.**

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, MODIFY LOAN TERMS OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

IN WITNESS WHEREOF, Borrower has executed this Note as of the date first above written.

"BORROWER":

WEST TRAVEL, INC.,
a Washington corporation

By _____
Name _Mark Detillion_
Title _VP Finance & CFO_

**EXHIBIT** 2
**Page** 15 of 35

# EXHIBIT 3

EXHIBIT 3
Page 16 of 35

REVOLVING CREDIT NOTE

USD$10,000,000.00

Seattle, Washington
June 18, 2008

FOR VALUE RECEIVED, WEST TRAVEL, INC., a Washington corporation ("Borrower"), promises to pay to HSBC BANK USA, N.A. ("HSBC"), or order, the principal sum of Ten Million and NO/100 Dollars (USD$10,000,000.00), or so much thereof as is advanced by HSBC pursuant to the terms and conditions of that certain Revolving Credit Line and Security Agreement dated June 18, 2008, by and among HSBC, Sterling Savings Bank and Borrower and incorporated herein by this reference as if fully set forth herein (the "Agreement"), in lawful money of the United States, with interest and charges as provided therein and herein. Payments under this note (the "Note") shall be made to Agent, for the benefit of HSBC, at 600 University Street, Suite 2323, Seattle, Washington 98101, or at such other place as Agent may designate in writing from time to time. All capitalized terms not defined herein shall have the meanings set forth in the Agreement, and in case of any inconsistency between this Note and the Agreement, the terms of the Agreement shall govern.

Interest, fees and charges will be calculated, and Loans repaid, in accordance with and pursuant to the provisions of the Agreement.

Borrower shall pay the actual out-of-pocket costs, breakage fees, losses, costs, charges and expenses of HSBC incurred in liquidating or terminating any contract relating to any LIBOR based Loan. Immediately upon the end of any LIBOR Loan, the Borrower shall pay interest on such Loan equal to the Prime Rate, as set forth in the Agreement. Borrower acknowledges that LIBOR Loans may not be available from time to time, and that LIBOR Loans shall not be available at any time any Default or Event of Default exists.

Borrower may prepay all or a part of the unpaid principal amount of any Loan at any time. Principal payments will be applied to the Loan identified by Borrower to HSBC in writing at the time of the principal repayment.

Borrower shall immediately pay to HSBC any difference between the amount of the Commitment and amounts outstanding under the Agreement, including the face amounts of any Letters of Credit then outstanding. Any amounts so paid shall be first applied to amounts owing hereunder and under the Agreement that are not principal or interest; thereafter, such payments shall be applied to principal and/or interest as Borrower shall designate.

Borrower acknowledges that a substantial portion of the Loan may be due at the Maturity Date. This Note constitutes an actual loan from HSBC to Borrower, and the repayment of this Note is secured by the Collateral.

EXHIBIT 3
Page 17 of 35

If HSBC consults an attorney regarding the enforcement or protection of any of its rights under any of the Loan Documents, or if any Loan Document is placed in the hands of an attorney for collection, or if suit is brought to enforce any Loan Document, Borrower promises to pay all reasonable costs thereof, including attorneys' fees, witness fees (expert and otherwise), and discovery and deposition costs. Said costs and attorneys' fees shall include, without limitation, costs and attorneys' fees incurred in any appeal or in any proceedings under any present or future federal bankruptcy, forfeiture or state receivership or similar law.

By its execution of this Note, Borrower represents and warrants to HSBC that the Loan proceeds will be used exclusively for commercial, investment, or business purposes and no Loan proceeds will be used for personal, family or household purposes.

It is agreed that notwithstanding any provision to the contrary in this Note or the other Loan Documents, no such provision shall require the payment or permit the collection of any amount in excess of the maximum amount of interest permitted by applicable law to be charged for the use or detention, or the forbearance in the collection, of all or any portion of the indebtedness evidenced by this Note ("Excess Interest"). If any Excess Interest is provided for, or is adjudicated to be provided for, in this Note or the other Loan Documents, then in such event (a) the provisions of this paragraph shall govern and control; (b) neither Borrower nor any guarantor or endorser shall be obligated to pay any Excess Interest; (c) any Excess Interest that HSBC may have received hereunder shall, at the option of HSBC, be (i) applied as a credit against the then outstanding principal amount of the Loan, accrued and unpaid interest thereon (not to exceed the maximum amount permitted by applicable law) or any other of Borrower's liabilities to HSBC, or any or all of the foregoing; (ii) refunded to the payor thereof; or (iii) any combination of the foregoing; (d) the interest rate shall be automatically subject to reduction to the maximum lawful contract rate allowed under applicable usury laws, and this Note and the other Loan Documents shall be deemed to have been, and shall be, reformed and modified to reflect such reduction in the interest rate; and (e) neither Borrower nor any guarantor or endorser shall have any action against HSBC for any damages whatsoever arising out of the payment or collection of any Excess Interest.

Borrower and HSBC intend and believe that each provision of this Note complies with all applicable laws. However, should any provision of this Note be found to be in violation of any law, ordinance, or policy and be declared illegal, invalid, unlawful, void or unenforceable as written, then Borrower and HSBC intend and agree that such provision shall be given force to the fullest possible extent and that the remainder of this Note shall continue to be fully enforceable in accordance with the terms hereof.

Any notice, report, or other communication required or permitted to be given hereunder shall be in writing and shall be deemed given on the date of delivery if delivered by courier or by fax; or three (3) days after mailing, if mailed first-class mail, postage prepaid, return receipt requested; or one (1) day after delivery by the sender to a nationwide overnight delivery service charges prepaid, return receipt requested, to the following addresses or fax numbers, as applicable:

<u>To HSBC:</u>

HSBC Bank USA, National Association
600 University Street, Suite 2323
Seattle, WA 98101
Telephone:    (206) 233-0888
Facsimile:    (206) 233-0808

<u>With a copy to:</u>

Michael Jay Brown
Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
Telephone:    (206) 464-4224
Facsimile:    (206) 583-0359

<u>To Borrower:</u>

West Travel, Inc.
2301 5th Avenue, Suite 401
Seattle, WA 98121
Telephone:    (206) 580-0072
Facsimile:    (206) 441-4757

<u>With a copy to:</u>

Stephan Coonrod
Kirkpatrick & Lockhart Preston Gates Ellis LLP
Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Telephone:    (206) 623-7580
Facsimile:    (206) 623-7022

Whenever reference is made to Borrower or HSBC, such reference shall be deemed to refer to and include the heirs, executors, legal representatives, successors and assigns thereof, the same as if in each case expressed, it being expressly agreed that the rights and obligations of all parties named in or liable under this Note shall inure to the benefit of and be binding upon such parties and their respective successors in title, heirs, executors, legal representatives, successors and assigns.

Time is of the essence for purposes of this Note.

Borrower, any endorsers and any guarantors severally waive presentment, protest and demand, notice of protest, demand or dishonor and nonpayment of this Note, and expressly agree that this

Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of Borrower or endorsers or guarantors hereof.

This Note is governed by and construed in accordance with the laws of the State of Washington, without giving effect to principles or provision relating to conflict or choice of laws. At the option of the holder hereof, the venue of any action hereon may be laid in King County, Washington, and Borrower waives any defense it may have based on forum non conveniens. As a material part of the consideration for this Note, and with the understanding that HSBC would not make the Loan evidenced hereby without such agreement, Borrower hereby irrevocably submits to the jurisdiction of the State of Washington in any such action.

**BORROWER AND HSBC MUTUALLY AGREE THAT THEY EACH WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THEM AGAINST THE OTHER ON ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS NOTE, THE LOAN DOCUMENTS OR THE LOAN OR LOANS EVIDENCED HEREBY.**

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, MODIFY LOAN TERMS OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

IN WITNESS WHEREOF, Borrower has executed this Note as of the date first above written.

"BORROWER":

WEST TRAVEL, INC.,
a Washington corporation

By _____
Name _____
Title _____

[DocNum]

EXHIBIT   3
Page 20 of 35

# EXHIBIT 4

EXHIBIT 4
Page 21 of 35

PREFERRED MORTGAGE

Dated June 18, 2008

VESSEL: SPIRIT OF DISCOVERY, O/N 574958

made by

WEST TRAVEL, INC.
2301 Fifth Avenue, Suite 401
Seattle, Washington 98121

Mortgagor

in favor of

HSBC BANK USA NATIONAL ASSOCIATION
600 University Street, Suite 2323
Seattle, Washington 98101

as Agent for itself and for Sterling Savings Bank

Mortgagee

| | |
|---|---|
| Mortgagor: | WEST TRAVEL, INC. |
| Mortgagor's Interest: | 100% |
| Mortgagee: | HSBC BANK USA NATIONAL ASSOCIATION as Agent |
| Mortgagee's Interest: | 100% |
| Amount of Mortgage: | $18,000,000.00 US Dollars |

**EXHIBIT** 4
**Page** 22 **of** 35

## PREFERRED MORTGAGE

THIS PREFERRED MORTGAGE (the "Mortgage") is dated the 18th day of June, 2008 in the amount of EIGHTEEN MILLION AND NO/100THS ($18,000,000.00) US Dollars, made by WEST TRAVEL, INC., with its Offices at 2301 Fifth Avenue, Suite 401, Seattle, Washington 98121 acting herein by and through its duly authorized officer (the "Owner"), to HSBC BANK USA NATIONAL ASSOCIATION with its Offices at 600 University Street, Suite 2323, Seattle, Washington 98101 as agent for itself and for STERLING SAVINGS BANK, a bank organized under the laws of the United States of America, whose address is 601 Union Street, Suite 1717, Seattle, Washington 98101 ("Sterling"), as co-lender (HSBC, in such capacity as agent for itself and for Sterling, "Mortgagee").

### WITNESSETH:

WHEREAS, the Owner is the sole owner of the whole of the vessel which is described as follows:

Name: SPIRIT OF DISCOVERY, O/N 574958

which vessel is duly documented under and pursuant to the laws of the United States of America at the National Vessel Documentation Center, and referred to as the "Vessel"; and

WHEREAS, the owner is indebted to the Mortgagee pursuant to two Revolving Credit Notes (collectively, the "Note") dated as of June 18, 2008, issued pursuant to Revolving Credit Line Security Agreement dated as of June 18, 2008, (hereinafter collectively referred to as "Loan Documents") among Owner and Mortgagee; said Note in the maximum aggregate principal amount of EIGHTEEN MILLION AND NO/100THS ($18,000,000.00) US Dollars, executed by the Owner and payable to the order of the Mortgagee as therein provided; and the Owner has agreed to give this Mortgage as security therefor and has authorized and directed the execution and delivery thereof;

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt of which is hereby acknowledged, and to secure the payment of the Note and indebtedness, interest and other sums that hereafter may become due pursuant hereto (all of which is called the "Indebtedness"), and the performance of all covenants hereof, the Owner has GRANTED, BARGAINED, SOLD, CONVEYED, TRANSFERRED, ASSIGNED, REMISED, RELEASED, MORTGAGED, SET OVER and CONFIRMED, and by these presents does GRANT, BARGAIN, SELL, CONVEY, TRANSFER, ASSIGN, REMISE, RELEASE, MORTGAGE, SET OVER and CONFIRM unto the Mortgagee, its successors and assigns, the whole of the Vessel, together with all of the Vessel' engines, boilers, machinery, bowsprits, sails, riggings, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, pipe, equipment and all other appurtenances thereunto appertaining and belonging, and all additions, improvements,(all of which shall be deemed to be included in the term "Vessel" in this Mortgage).

TO HAVE AND TO HOLD all and singular the Vessel unto the Mortgagee, its successors and assigns, as set forth in this Mortgage.

Provided, however, that if the Owner or its successors or assigns shall pay or cause to be paid to the Mortgagee or its successors and assigns all outstanding Indebtedness when due under the Note, and shall keep, perform and observe all and singular the covenants, conditions, stipulations, promises and agreements in the Note and in any renewals for any period, increases and/or extensions thereof, and in this Mortgage expressed or implied to be kept, performed and observed by or on the part of the Owner, , then this Mortgage and the estate and rights hereby granted shall cease, determine and be void; otherwise to remain in full force and effect.

The Owner agrees to pay the Note and the Indebtedness with interest thereon as herein and in the Note provided, and as provided in any arrangements, renewals for any period, increases and/or extensions thereof, and

EXHIBIT 4
Page 23 of 35

to perform and observe the further terms, covenants and agreements herein, and to hold the Vessel subject thereto.

The maximum amount of direct or contingent obligations that may become secured by this Mortgage is EIGHTEEN MILLION AND NO/100THS ($18,000,000.00) US Dollars excluding interest, expenses and fees. The discharge amount is the amount of Indebtedness due under the Note by its terms, including the face amounts of any outstanding letters of credit referenced in the Loan Documents (which amounts shall be included in any reference herein to outstanding indebtedness under the Note or the Loan Documents). Upon receipt of the discharge amount, the Mortgagee shall release and discharge the Vessel from the lien of this Mortgage. The Mortgagee expressly does not waive the preferred status of this Mortgage.

## ARTICLE I.

The Owner hereby covenants and agrees:

Section 1. The Owner is and shall continue to be a citizen of the United States of America within the meaning of 46 USC 12102, and is entitled to own and operate the Vessel under the marine documents, which the Owner shall maintain in full force and effect; and all action necessary for the execution, delivery, performance and validity hereof and of the Note has been taken. The Owner was duly organized and is now existing under the laws of the State of Washington and is duly authorized to mortgage the property covered hereby, and this Mortgage and the Note are and will be legal, valid and binding obligations of the Owner enforceable in accordance with their terms.

Section 2. The Owner is the sole owner of the whole of the Vessel and is lawfully possessed of the Vessel and will warrant and defend the title and possession thereto and in every part thereof for the benefit of the Mortgagee against the claims and demands of all persons whomsoever, and any claims that the Owner, its successors and/or assigns, now have or hereafter may have arising out of the past or future transactions with the Mortgagee or its successors and assigns shall not offset the rights hereunder of the Mortgagee or its successors and assigns or be used as a bar or defense to, or as a counterclaim or offset against, any action, suit or proceeding by the Mortgagee or its successors and assigns to enforce the covenants, stipulations and conditions of this Mortgage or the Note secured hereby, and the Owner further agrees that it and its successors and assigns are hereby estopped from setting up or asserting any such claims in any action, suit or proceeding; and the Owner warrants that the Vessels are free and clear from any lien, charge or encumbrance whatsoever prior to the lien of this Mortgage or to any other lien held by the Mortgagee, except for Permitted Maritime Liens (as defined in the Credit Agreement).

Section 3. The Owner shall, at its own cost and expense, and at all times during the continuance of this Mortgage, keep the Vessel insured against such risks and contingencies and in such amounts as is customary in the industry and business of the Owner with respect to vessels comparable to the Vessel which are engaged in activities similar to those of the Vessel, and without limiting the generality of the foregoing, the Owner will keep the Vessel insured with (i) marine hull and machinery insurance in an amount not less than the greater of (a) the full insurable value or (b) such amount so that the total marine hull and machinery insurance on the Vessel, the Spirit of '98 (O/N 677464) and the Spirit of Endeavour (O/N 661485), taken together, is at least 110% of the outstanding indebtedness under the Loan Documents, including the face amounts of any outstanding letters of credit referenced in the Loan Documents (ii) marine protection and indemnity insurance in amounts approved by Mortgagee (iii) tower's liability insurance whenever the Vessel shall tow another vessel or object in amounts approved by Mortgagee (iv) third party pollution liability insurance and pollution cleanup insurance as required by applicable law (v) mortgagee's interest insurance in the minimum amount of the Vessel's hull and machinery insurance required hereunder. Unless otherwise required or permitted by the Mortgagee, the Owner will, at its own expense, keep the Vessel insured for an amount not less than the greater of (a) the full insurable value of the Vessel or (b) such amount so that the insurance on the Vessel, the Spirit of '98 (O/N 677464) and the Spirit of Endeavour (O/N 661485), taken together, is at least 110% of the outstanding indebtedness under the Loan Documents, including the face amounts of any outstanding letters of credit referenced in the Loan Documents. The Owner will keep the premiums and other charges thereon fully paid. Such insurance shall be on such forms of policies and include such coverage provisions as the Mortgagee from time to time may require and shall be placed

EXHIBIT 4
Page 24 of 35

and kept with responsible underwriters in good standing and satisfactory to the Mortgagee.  Owner further covenants and agrees that:

(a)  All insurance required hereunder shall be taken out in the name of the Owner and such other parties, if any, as the Owner may desire for the account of whom it may concern and cover all operational areas where the Vessel shall operate during the existence of this Mortgage.  Such policies shall provide that all losses are payable as set forth in paragraph (d).

(b)  Notwithstanding that the Owner is named in the loss payable clause of the policies on the Vessels, all losses under policies of insurance carried on the Vessel shall be payable to the Mortgagee for the account of the Mortgagee and the Owner as their respective interests may appear.  At the option of the Mortgagee, all moneys so received shall either be applied on the Indebtedness secured hereby, or to the repair of the damage in respect of which the insurance loss was paid, or in reimbursement of moneys so applied by the Owner.  Provided, however, (i) any loss under any insurance on the Vessel with respect to protection and indemnity or similar risks and liabilities may be paid directly to the person to whom any liability covered by such insurance has been incurred, or to the Owner to reimburse it for any loss, damage or expense incurred by it with respect to third party liabilities and covered by such insurance, provided that, in the latter event, the underwriter shall have first received evidence that the liability insured against has been discharged; and (ii) any amounts with respect to a loss of up to $50,000.00 shall be paid directly for the repair, salvage or other liability or charge involved, or if the Owner shall have first properly repaired such damage and paid the costs thereof or paid and discharged such salvage or other liability or charge, and the insurers shall have first received evidence thereof, such amounts shall be paid directly to the Owner as reimbursement therefor.

(c)  In the event of an actual or constructive total loss of the Vessel, the insurance proceeds for such loss shall be applied as follows: (i) to the payment of the costs of collecting such insurance if any; (ii) to the payment of the principal sum of the Note, outstanding and accrued interest and all other sums owed by the Owner to the Mortgagee or its successors and assigns under the terms of this Mortgage and the Note and Loan Documents ; and (iii) the balance, if any, to the Owner.

(d)  All policies, amendments, endorsements and binders shall name Mortgagee as an assured in addition to Owner and as sole loss payee (except Mortgagee's interest insurance, as to which Owner shall not be an assured or loss payee).

(e)  Copies of all policies and/or binders and/or cover notes evidencing insurance as required hereunder shall be delivered to the Mortgagee or its successors and assigns for its approval and custody.

(f)  The Owner shall obtain an endorsement to such insurance policies that the underwriters will give thirty (30) days' prior notice to the Mortgagee of any cancellation of or material change in any insurance coverage, and the Owner will furnish evidence satisfactory to the Mortgagee that all premiums and other charges therefor have been fully paid.

(g)  Owner shall maintain insurance such that the interests of Mortgagee shall not be impaired or invalidated by any act or neglect of the Owner, master, agent or crew of the Vessels, or by the failure of Owner to comply with any warranty or conditions over which Mortgagee has no control, provided, that the amount of the above-described insurance coverage shall equal one hundred ten percent (110%) of the total amount outstanding under the Note.

Section 4.  The Owner will not do any act or voluntarily suffer or permit any act to be done whereby any insurance shall or may be suspended, impaired or defeated; the Owner will not suffer or permit the Vessel to engage in any voyage or to carry any cargo not permitted under the policies of insurance in effect without first covering the Vessel to the amount herein provided for with insurance satisfactory to the Mortgagee and its

**EXHIBIT** 4
**Page** 25 of 35

successors and assigns for such voyage or the carriage of such cargo; and the Owner will not cause or permit the Vessel, while subject to this Mortgage, to be operated in any manner contrary to any laws, treaties, conventions, rules, regulations or orders of the United States of America, and/or any other jurisdiction wherein operated, and/or of any department or agency thereof, or remove the Vessel from the limits of the United States of America, save on voyages with the intent of returning, or abandon the Vessel in any foreign port.

Section 5. Except as provided in Section 2, neither the Owner nor the masters of the Vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed upon the Vessel, or any part of any of the Vessel, subject or intended to be subject to this Mortgage, any lien whatsoever, other than Permitted Liens. Owner shall have fifteen (15) business days in which to cause the release of non-Permitted Liens.

Section 6. The Owner will pay and discharge, or cause to be paid and discharged, when due and payable, from time to time, all taxes, assessments, government charges, fines and penalties lawfully imposed upon the Vessel. If a libel shall be filed against the Vessel or if the Vessel shall be levied upon or taken into custody, or detained by any proceeding in any court or tribunal, or by any government, or any other authority, the Owner, within fifteen (15) business days thereafter, will cause such Vessel to be released and any lien thereon, other than this Mortgage, to be discharged. In the event such Vessel is levied upon, or taken into custody, or detained by any authority whatsoever, the Owner agrees forthwith to notify the Mortgagee by telegram, confirmed by letter, at its offices set forth in the opening paragraph of this Mortgage.

Section 7. The Owner will, at all times, and without cost or expense to the Mortgagee, maintain and preserve the Vessel, so far as practicable, in at least as good condition, working order and repair as such Vessel is at the date of this Mortgage, ordinary wear, tear and depreciation excepted; and the Owner will keep the Vessel in such condition as will entitle it to the highest classification and rating for vessels of the same age and type. If the Vessels are subject to classification by the American Bureau of Shipping, or other similar classification society of like standing, the Owner will annually furnish to the Mortgagee a statement of such Bureau or classification society that such classification is maintained. The Owner will not make or permit to be made any substantial change in the structure, type or speed of the Vessel, or change in any of its rigs, without first receiving written approval from the Mortgagee.

Section 8. At all times the Owner will afford the Mortgagee or its successors and assigns, or its authorized representatives, full and complete access to the Vessel for the purpose of inspecting the same and its cargo and papers.

Section 9. Except as provided in section 2, the Owner will not sell or mortgage the Vessel in any manner, without the written consent of the Mortgagee being first had and obtained, and any such written consent to any such sale or mortgage shall not be construed to be a waiver of this provision in respect to any subsequent proposed sale or mortgage. Any sale or mortgage of the Vessel shall be subject to the provisions of this Mortgage and the lien it creates. The Owner will not merge or consolidate with any other firm or corporation, or dissolve, during the term of this Mortgage, without the prior written consent of the Mortgagee. So long as this Mortgage shall be outstanding, the Vessel shall remain documented under the laws of the United States of America.

Section 10. In the event this Mortgage, the Note or any other note given herewith or hereafter with reference to the Vessel, or any provisions hereof, shall be deemed invalidated in whole or in part by any present or future law of the United States of America or any decision of any authoritative court, the Owner will execute such further instruments and do such things as in the opinion of counsel for the Mortgagee or its successors and assigns will carry out the true intent and spirit of this Mortgage. From time to time, for the reasons aforesaid or for any other reasons deemed sufficient by the Mortgagee or its successors and assigns, the Owner will execute such assurances as in the opinion of such counsel may be required more effectually to subject the property hereby mortgaged or intended to be mortgaged to the payment of the Note and the Indebtedness.

Section 11. The Owner will maintain its existence, rights and franchises, and will exercise its best efforts to procure the extension or renewal of any right, franchise or privilege expiring as the result of lapse of time.

EXHIBIT 4
Page 26 of 35

Section 12.  The Owner punctually and faithfully will keep, perform, observe and carry out all and singular the terms, covenants, conditions, stipulations and agreements contained in this Mortgage, expressed or implied, and on its part to be kept, performed, observed and carried out.

## ARTICLE II.

Section 1.  Any of the following shall be an event of default thereunder:

(a)  the Owner shall sell, mortgage or transfer the Vessel or any of the appurtenances or parts thereof, or shall attempt to sell, mortgage or transfer the Vessels or any of the appurtenances or parts thereof, or to change the flag of the Vessel, without the written consent of Mortgagee and its successors and assigns,

(b)  the Owner shall cease to be a citizen of the United States of America as defined by 46 USC 12102, or shall cease to be entitled to own or operate the Vessel as a United States flag vessel and Owner fails to correct such deficiency within 30 days after receiving written notice of such failure by Mortgagee; or

(c)  the Vessel shall be libeled or levied upon or taken by virtue of any attachment or execution or seized by any governmental authority, and shall not have been released from such libel, levy, attachment, execution or seizure within fifteen (15) business days;

(d)  the Owner shall remove or attempt to remove the Vessel beyond the limits of the United States of America, except on voyages with the intention of returning to the United States of America, or except with the prior written consent of the Mortgagee or its successors and assigns, or shall abandon the Vessel in a foreign port; or

(e)  the Owner shall fail to promptly and faithfully perform or observe any of the covenants, conditions or agreements on the part of the Owner to be performed and observed in this Mortgage, and Owners fails to correct such failure within 30 days after receiving written notice of such failure by Mortgagee;

(f)  Owner shall fail to obtain or maintain in full force and effect insurance required by this Mortgage and Owners fails to correct such failure within 30 days after receiving written notice of such failure by Mortgagee, or

(g)  the occurrence of an event of default as defined in the Note and Loan Documents.

If any such event of default occurs, Mortgagee may, at its option, do any one or more of the following:

(1)  declare the Indebtedness to be due and payable immediately, and upon such declaration the same shall become and be immediately due and payable, and thereafter shall bear interest at the rate per annum specified in the Note, provided, however, that if before any sale of any of the mortgaged property all defaults shall have been remedied and removed and full performance made by the Owner to the satisfaction of the Mortgagee and its successors and assigns, and all installments of principal and interest in arrears and the reasonable charges and expenses of the Mortgagee and its successors, assigns, agents and attorneys shall have been paid, then in every case, the Mortgagee and its successors and assigns may waive any such default by written notice to that effect to the Owner; but no such waiver or other waiver shall extend to or effect any subsequent or other default or impair any rights or remedies consequent thereon;

EXHIBIT  4
Page  27 of 35

(2)  recover judgment for any amount due on the Indebtedness, either by the terms of any instrument evidencing or securing the Indebtedness or by virtue of such declaration in (1) above, and collect the same out of any property of the Owner;

(3)  retake the Vessel without legal process, wherever the same may be, and the Owner shall forthwith upon demand of the Mortgagee surrender to the Mortgagee or its successors and assigns possession of the Vessels, and the Mortgagee or its successors and assigns may hold, lease, charter, operate or otherwise use the Vessel for such time and upon such terms as it may deem to be for its best advantage, accounting only for the net profits, if any, arising from such use of the Vessel, and charging upon all receipts from the use of the Vessel, or from the sale of the Vessel, by court proceedings or pursuant to the following Subsection (4), all costs, expenses, charges, damages or losses by reason of such use; and if at any time the Mortgagee or its successors or assigns shall avail itself of the rights herein given to retake the Vessel, and does retake the same, the Mortgagee shall have the right to dock the Vessel for a reasonable time at any dock, pier or other premises of the Owner without charge, or to dock at any other place at the reasonable cost and expense of the Owner and for a reasonable time; and

(4)  retake the Vessel without legal process wherever the same may be, and the Owner shall forthwith upon demand of the Mortgagee or its successors and assigns surrender to the Mortgagee or its successors and assigns possession of the Vessel, and the Mortgagee or its successors and assigns may sell the same at public sale, free from any claim of or by the Owner of any nature whatsoever, by first publishing notice of any public sale for ten (10) consecutive days, except Sundays, in some newspaper of general circulation published at or near the place designated for such sale, and by mailing notice of such sale to the owner at it's last known address and such sale may be held at such place and at such time as the Mortgagee or its successors and assigns in such notice may have specified, or such sale may be adjourned by the Mortgagee or its successors and assigns from time to time by announcement at the time and place appointed for such sale or for such adjourned sale and without further notice or publication the Mortgagee or its successors and assigns may make such sale at any time and place to which the same shall be so adjourned; and such sale may be conducted without bringing the Vessel to the place designated for such sale and in any such manner as the Mortgagee or its successors and assigns may deem to be for its best advantage, and the Mortgagee or its successors and assigns may become the purchaser at such sale.

In the event of default, Mortgagee and its successors and assign hereby irrevocably are appointed the true and lawful attorneys of the Owner in its name and stead to make all necessary transfers of the Vessel, and for that purpose it or they shall execute all necessary instruments of assignment and transfer, the Owner hereby ratifying and confirming all that its attorney or attorneys shall lawfully do by virtue hereof.  Nevertheless, the Owner shall, if so requested by the Mortgagee or its successors and assigns, ratify and confirm any such sale by executing and delivering to the purchaser or purchasers of the Vessels, such proper bills of sale, conveyances, instruments of transfer and releases as may be designated in such request.

The Owner covenants and agrees that in addition to any and all other rights, powers and remedies elsewhere in this Mortgage granted to and conferred upon the Mortgagee or its successors and assigns, in any suit to enforce any of their rights, powers or remedies, the Mortgagee, its successors and assigns shall be entitled as a matter of right and not as a matter of discretion to the appointment of a receiver of the Vessel, and that any receiver so appointed shall have full rights and powers to use and operate the Vessel.

Section 2.  In the event the Vessel shall be arrested or detained by a marshal or other officer of any court at law, equity or admiralty jurisdiction in any country or nation of the world or by any government or other authority and shall not be released from arrest or detention within fifteen (15) days from the arrest or detention, the Owner does hereby authorize and empower any officer of the Mortgagee or its successors and assigns in the name of the Owner or its successors or assigns to apply for and receive possession of and/or take possession of such Vessel, with all rights and powers that the Owner or its successors and assigns might have, possess and exercise in any such event; and this power of attorney shall be irrevocable and may be exercised not only by the officials

EXHIBIT  4
Page 28 of 35

hereinabove named but also by an appointee or appointees of any such official with full power of substitution to the same extent as if said appointee or appointees has been named as one of the attorneys above named by express designation, but the Mortgagee shall not be under any obligation to act in connection with the rights given in this paragraph.

The Owner also authorizes and empowers the officials above specified or their appointees, or any of them, to appear in the name of the Owner, its successors or assigns, in any court of any country or nation of the world where a suit is pending against such Vessel, because of or on account of any alleged lien against such Vessel, from which such Vessel has not been released, and to take such actions as may seem proper toward the defense of such suit and the discharge of such lien, and all expenditures made or incurred by them, or any of them, for the purpose of such defense and/or discharge shall be a debt due from the Owner, its successors and assigns, to Mortgagee and its successors and assigns, and shall be secured by the lien of this Mortgage in like manner and extent as if the amount and description thereof were written herein.

Section 3. Each and every power and remedy herein specifically given to the Mortgagee and/or its successors or assigns shall be cumulative and shall be in addition to every other power and remedy herein specifically given or now or hereafter existing at law, in equity, admiralty or by statute, and each and every power and remedy, whether specifically herein given or otherwise existing, may be exercised from time to time and as often and in such order as may be deemed expedient by the Mortgagee or its successors and assigns, and the exercise or the beginning of the exercise of any power or remedy shall not be construed to be a waiver of the right to exercise at the same time or thereafter any other power or remedy. No delay or omission by the Mortgagee or by any of the holders of the Note in the exercise of any right or power or in the pursuance of any remedy accruing upon any default as above defined shall impair any such right, power or remedy or be construed to be a waiver thereof or of any such event of default or to be any acquiescence therein; nor shall the acceptance by the Mortgagee or its successors and assigns of any security or any payment of or on account of the Indebtedness maturing after any event of default under this Mortgage or any payment on account of any past default be construed to be a waiver of any right to take advantage of any future event of default under this Mortgage or of any past event of default not completely cured thereby.

Section 4. The proceeds of the sale of the Vessel, and the net earnings from any management, charter or other use of the Vessel by the Mortgagee or its successors or assigns under any of the powers above specified, and the proceeds of any claim for damages on account of the Vessels received by the Mortgagee or its successors and assigns while exercising any such power and the proceeds of any judgment collected by the Mortgagee or its successors and assigns for any default hereunder, shall be applied as follows:

First: To the payment of all expenses and charges, including the expense of any sale, the expense of any retaking and any other expenses or advances made or incurred by the Mortgagee or its successors and assigns in the protection of its rights or the pursuance of its remedies hereunder and to the payment of any damages sustained by the Mortgagee or its successors and assigns from the default or defaults of the Owner, all with interest as provided herein, and to provide adequate indemnity against liens claiming priority over this Mortgage;

Second: To the payment of the Indebtedness, any renewal and/or extensions thereof and all other sums secured hereby, due or which may be declared due under this Mortgage, with interest to the date of such payment; and

Third: Any surplus thereafter remaining shall belong and be paid or returned to the Owner.

In the event that the proceeds are insufficient to pay the amounts specified in paragraphs "First" and "Second" above, the Mortgagee or its successors and assigns shall be entitled to collect the balance from the Owner.

Section 5. If the Owner shall make default in the observance or performance of any of the covenants, conditions or agreements in this Mortgage on its part to be performed or observed, the Mortgagee or its successors and assigns may, in its discretion, do any act or make any expenditures necessary to remedy such default,

EXHIBIT 4
Page 29 of 35

including without limitation of the foregoing, entry upon the Vessel to make repairs, and the Owner shall promptly reimburse the Mortgagee or its successors and assigns with interest at the rate specified in the Note for any and all reasonable expenditures so made or incurred, and until the Owner has so reimbursed the Mortgagee or its successors and assigns for such expenditures, the amount thereof shall be secured by the lien of this Mortgage in like manner and extent as if the amount and description thereof were written herein; but the Mortgagee or its successors and assigns, though privileged so to do, shall be under no obligation to the Owner to make any such expenditures nor shall the making thereof relieve the Owner of any default in that respect. The Owner shall also reimburse the Mortgagee or its successors and assigns for any and all reasonable advances and expenses made or incurred by the Mortgagee or its successors and assigns at any time in lawfully retaking the Vessel or otherwise protecting its rights hereunder, and for any and all damages sustained by the Mortgagee or its successors and assigns from or by reason of any default or defaults of the Owner.

ARTICLE III.

Section 1.   Until one or more of the events of default hereinabove described, the Owner shall be permitted to retain actual possession and use of the Vessel.

Section 2.   All covenants and agreements of the Owner herein contained shall bind the Owner, its successors and assigns, and shall inure to the benefit of the Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee.

Section 3.   The references to the "Note" throughout this Mortgage shall cover and include any and all renewals for any period, extensions for any period, increases, amendments, supplements and/or rearrangements thereof, as provided in such Note.

Section 4.   If any provision of this Mortgage shall be held to be invalid under the provisions of 46 USC 31322 or under the provisions of any other law, such invalid provisions shall be deemed deleted from this Mortgage, but the validity of the Mortgage shall not otherwise be affected.

Section 5.   All notices, requests and communications hereunder shall be in writing and shall be sufficient if delivered or sent by registered or certified mail to the Mortgagee at 600 University Street, Suite 2323, Seattle, Washington 98101 and to the Owner at the address indicated at the beginning of this Mortgage. Either party may, by proper written notice hereunder to the other party, change the address to which notices shall thereafter be sent to it. Any such notice, request or communication so addressed and mailed shall be deemed to be given when so mailed, and any such notice, request or communication so delivered shall be deemed to be given when received by the Mortgagee or the Owner, as the case may be.

IN WITNESS WHEREOF, on the day and year first above written, the Owner has executed this Mortgage in multiple counterparts, each of which counterparts, duly executed and delivered, shall be deemed an original instrument.

WEST TRAVEL, INC.

By _____

Name: MARK DETILLION

Title: VP Finance & CFO

EXHIBIT 4
Page 30 of 35

## ACKNOWLEDGMENT

STATE OF WASHINGTON   )
                              ) ss. . Dated _June 18_, 2008.
COUNTY OF KING         )

BEFORE ME, the undersigned authority, a notary public in and for said county and state, on this _18 th_ day _June_, 2008 personally appeared _Mark Detillion_ known to me to be the person and officer whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

_Joan E. Gordon_

Washington

JOAN E GORDON
NOTARY PUBLIC
STATE OF WASHINGTON
MY COMMISSION EXPIRES 11/19/2011

NOTARY PUBLIC in and for the State of
residing at _Issaquah, WA_
My Commission expires _11/19/2011_
Print Name: _Joan Gordon_

## PRIOR AND SUBSEQUENT LIENS AFFIDAVIT

STATE OF WASHINGTON   )
                              ) ss. Dated: _June 18_, 2008.
COUNTY OF KING         )

I/We, the undersigned, in pursuance of the provision of 46 USC 31323, do hereby certify that at the time of executing a certain Preferred Mortgage on the SPIRIT OF DISCOVERY, O/N 574958 that there is no maritime lien, prior mortgage or other obligation of liability upon the said vessel known to the undersigned mortgagor.

It is further certified that without the consent of the Mortgagee under this mortgage, there will not be incurred after the execution of the Mortgage, and before the Mortgagee has had a reasonable time in which to file same, any contractual obligation creating a lien upon the vessel other than lien for wages for stevedores employed directly by the owner-master of the vessel, wages of the crew of the vessel, general average or salvage including contract salvage, in respect to said vessel.

WEST TRAVEL, INC.

_Mark Detillion_
Name: _Mark Detillion_
Title: _VP Finance & CFO_

SUBSCRIBED AND SWORN TO before me this _18 th_ day of _June_, 2008.

_Joan E. Gordon_
NOTARY PUBLIC in and for the State
of Washington, residing at _____
_Issaquah, WA_
My Commission expires _11/19/2011_

JOAN E GORDON
NOTARY PUBLIC
STATE OF WASHINGTON
MY COMMISSION EXPIRES 11/19/2011

EXHIBIT 4
Page 31 of 35

# EXHIBIT 5

EXHIBIT 5
Page 32 of 35

OMB APPROVED 1625-0027
EXPIRATION DATE:

| U.S. DEPARTMENT OF HOMELAND SECURITY U.S. COAST GUARD CG-5542 (REV. 06/04) | OPTIONAL APPLICATION FOR FILING (SEE INSTRUCTIONS AND PRIVACY ACT ON REVERSE) | THIS SECTION FOR COAST GUARD USE ONLY |

**1. NAME OF VESSEL** (ATTACH SCHEDULE IF MORE THAN ONE VESSEL)

Spirit of Discovery

**2. OFFICIAL NUMBER OR OTHER UNIQUE IDENTIFIER**

574958

RECORDED

**3. INSTRUMENT TYPE: (CHECK ALL THAT APPLY)**

[ ] PREFERRED MORTGAGE    [ ] ASSUMPTION    [ ] AMENDMENT

[ ] CHATTEL MORTGAGE    [ ] SUPPLEMENT    [ ] SUBORDINATION

[ ] OTHER (DESCRIBE)    [X] ASSIGNMENT

PORT

BOOK

PAGE

BY

**4. NAME(S) AND ADDRESS(ES) OF GRANTOR(S)**    (MORTGAGOR(S), ASSIGNOR(S), ASSUMING PARTY(IES), OR OTHER(S) -- SEE INSTRUCTIONS)

HSBC Bank USA National Association
as agent for itself and Sterling Savings Bank
600 University, Suite 2323
Seattle, Washington  98101

INTEREST OWNED IN VESSEL OR HELD IN MORTGAGE AFFECTED BY ATTACHED INSTRUMENT _____ 100 _____ %.  (100% UNLESS OTHERWISE STATED)

**5. NAME(S) AND ADDRESS(ES) OF GRANTEE(S)**    (MORTGAGEE(S), ASSIGNEE(S), OR OTHER(S) -- SEE INSTRUCTIONS)

West-Hardwick Marine, LLC
107 A Toivo Circle
Sitka, Alaska  99835

PERCENTAGE OF VESSEL MORTGAGED OR MORTGAGE ASSIGNED _____ 100 _____ %.  (100% UNLESS OTHERWISE STATED)

**6. AMOUNT**

$18,000,000.00

**7. IDENTIFICATION ON INSTRUMENT ASSUMED, ASSIGNED, AMENDED, SUPPLEMENTED, SUBORDINATED, OR OTHERWISE MODIFIED:**

RECORDED BOOK: _____    PAGE: _____    FILE/RECORDED DATE: June 19, 2008    TIME: 12:07 PM

OTHER IDENTIFYING DATA: Doc ID No. 9073412/Batch No. 645475

**8. CERTIFICATION AND ATTESTATION:**

I (WE) HEREBY CERTIFY THAT THE FACTS RECITED HEREIN ARE TRUE AND CORRECT. I (WE) UNDERSTAND THAT THE U.S. COAST GUARD WILL RELY ON THOSE RECITATIONS IN INDEXING THE ATTACHED INSTRUMENT.

SIGNATURE(S): (SEE INSTRUCTIONS)

FOR THE GRANTOR(S)    FOR THE GRANTEE(S)

*[signature]*    *[signature]*

MEMBER / MANAGER
JOHN HARDWICK

STATE: New York
COUNTY: Erie
SUBSCRIBED AND SWORN BEFORE ME ON: September 9, 2010

JOSHUA P. FLEURY
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 09/21/13

NOTARY PUBLIC
MY COMMISSION EXPIRES: 9/21/2013
(DATE)

WARNING: FALSE STATEMENT MAY RESULT IN FINE OR IMPRISONMENT PURSUANT TO TITLE 18 USC.

PREVIOUS EDITION OBSOLETE    SN 7530-01-GF3-2550

**EXHIBIT 5**

## ASSIGNMENT OF PREFERRED MORTGAGE

FOR VALUABLE CONSIDERATION, HSBC BANK USA NATIONAL ASSOCIATION as agent for itself and for STERLING SAVINGS BANK, a bank organized under the laws of the United States of America, (the "Assignor"), having its principal office at 600 University Street, Suite 2323, Seattle, Washington 98101, hereby assigns, grants, sells and transfers to the WEST-HARDWICK MARINE, LLC, a Washington limited liability company ("Assignee"), having its principal place of business at 107 A Toivo Circle, Sitka, Alaska 99835, and the Assignee's successors, transferees and assigns forever, all of the right, title and interest of the Assignor in and to the *Preferred Mortgage* dated June 18, 2008, entered into by West Travel, Inc., a Washington corporation ("Borrower") for the benefit of the Assignor, securing an indebtedness of the Borrower to the Assignor in the principal amount of Eighteen Million and 00/100 Dollars ($18,000,000.00), and filed with the National Vessel Documentation Center on June 19, 2009, at 12:07 p.m., under Document ID No. 9073412, Batch No. 645475 (the "Mortgage"), which indebtedness is secured by that certain vessel SPIRIT OF DISCOVERY (O/N574958).

Together with the note or other obligation described in the Mortgage and all obligations secured by the Mortgage now or in the future.

IN WITNESS WHEREOF, the Assignor has executed this Assignment to be effective as of the 8th day of September, 2010.

**ASSIGNOR:**

HSBC BANK USA NATIONAL ASSOCIATION

By: _____
     Bruce F. Dent
Title:  Vice President

EXHIBIT 5
Page 34 of 35

# ACKNOWLEDGMENT

State of ~~Washington~~ *New York*          )
                                           )
County of _*Erie*_                         )


I certify that I know or have satisfactory evidence that <u>Bruce F. Dent</u> is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as the Vice President of HSBC Bank USA National Association to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: September _*9*_, 2010

JOSHUA P. FLEURY
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 09/21/ *13*

(Signature) *Joshua P. Fleury*

(Print Name)
Notary Public for the State of *New York*
My appointment expires  *9/21/2013* .

EXHIBIT  *5*
Page *35* of *35*